UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 07-80375-CIV-MARRA/JOHNSON

BRITTANY DORSETT, a minor, by and
through her mother, DEBORAH DORSETT,

    Plaintiff,

v.

NATIONWIDE INSURANCE COMPANY
OF FLORIDA, a foreign corporation,

    Defendant.
_____/

## OPINION AND ORDER ON MOTION TO STRIKE AND CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE comes before the Court on Plaintiff's Motion for Partial Summary Judgment (DE 19), Defendant's Motion for Partial Summary Judgment (DE 35), and Plaintiff's Motion to Strike Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion for Default (DE 25).  The motions are fully briefed and are ripe for review.  The Court has carefully considered the motions and is otherwise fully advised in the premises.

On March 20, 2007, Plaintiff Brittany Dorset ("Plaintiff"), by and through her Mother, Deborah Dorsett, filed a two-count Complaint against Defendant Nationwide Insurance Company of Florida ("Defendant"), alleging one count each of breach of contract and breach of duty of good faith.[1]  (DE 1.)  Defendant removed the case to this Court on April 27, 2007.

---

[1] Count II was stayed by this Court's Order (DE 9) on June 12, 2007.

1

**Background**

The facts, as gleaned from the exhibits submitted with the parties' motions for summary judgment, are as follows: Defendant issued a homeowners' insurance policy to Anthony Henderson ("Henderson") with personal liability coverage of $300,000.00 per occurrence. (Pl. Ex. A.) Under the policy, Defendant agreed to pay "damages an insured is legally obligated to pay due to an occurrence." (Pl. Ex. A at G1.) The policy defined "occurrence" as "bodily injury or property damage resulting from an accident." (*Id.*) The policy explicitly excluded coverage for bodily injury "caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct." (Pl. Ex. A at H1.) The policy also excluded coverage for any injury "resulting from sexual molestation, physical or mental abuse, harassment, whether actual, alleged or threatened." (Pl. Ex. A at H2.)[2]

On July 24, 2002, Plaintiff filed a complaint in Florida state court against Henderson (Pl. Ex. D); the complaint was subsequently amended on November 24, 2003 (Pl. Ex. F.) The complaint alleged that, in March 2001, Plaintiff (who was eleven years old at the time) spent the night and Henderson's home. (Pl. Ex. F at ¶ 8.) During the course of the evening, Plaintiff alleged that Henderson provided Plaintiff with alcohol, "took photographs of [Plaintiff] in sexually erotic positions." (Pl. Ex. F at ¶ 11.) Henderson also allegedly "touched [Plaintiff] on her genitals on numerous occasions." (Pl. Ex. F at ¶ 12.) Plaintiff alleged five causes of action: battery, intentional infliction of emotional distress, negligence, mother's loss of consortium, and

---

[2]A further exclusion existed for injury "caused by or resulting from an act or omission which is criminal in nature and committed by an insured" regardless of whether the insured was ever indicted for his actions. (Pl. Ex. A at H1.)

2

father's loss of consortium.  (Pl. Ex. F at ¶¶ 17-41.)

Defendant declined to extend coverage and defend Henderson in this underlying state court action.  (Pl. Ex. G.)  Defendant stated that the counts in the complaint for battery, intentional infliction of emotional distress, and negligence were all intentional acts, criminal acts, or acts constituting sexual molestation which were all excluded from the policy coverage.  (*Id.*)  Since the policy did not cover Henderson's acts, Defendant claimed it had no duty to defend Henderson in the underlying suit.  (*Id.*)  Henderson subsequently assigned his rights to sue Defendant for breach of contract and breach of the duty of good faith to Plaintiff and her mother.  (*See* DE 1.)

**MOTION TO STRIKE**

Plaintiff moves to strike Defendant's response (DE 21) to its motion for summary judgment.  Plaintiff's motion for summary judgment was filed on December 19, 2007, but Defendant did not file a response until February 6, 2008.  Defendant's response was due on January 10.  Plaintiff argues that this response was untimely filed pursuant to S.D. Fla. L.R. 7.1(c), which gives the party opposing a motion for summary judgment ten days to respond to the motion.  Defendant argues that its failure to respond timely was inadvertent, and Defendant requests that the Court accept its response pursuant to Fed. R. Civ. P. 6(b)(1)(B), which states that a court may accept a late filing if a "party failed to act because of excusable neglect."  Defendant claims that its failure to respond was due to excusable neglect and, as a result, its response should be accepted.

This Court will rule on the merits of a case whenever possible; defaults are strongly disfavored.  *See Griffin IT Media, Inc. v. Intelligentz Corp.*, No. 07-80535, 2008 WL 162754

(S.D. Fla. Jan. 16, 2008) (Marra, J.); *see also Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (explaining the strong policy of determining cases on their merits). Excusable neglect is an equitable determination, and the Supreme Court has stated that factors to consider include the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant has acted in good faith. *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

Plaintiff has not argued that she would be prejudiced if the Court accepted Defendant's response. In fact, Plaintiff has not presented a single argument why striking Defendant's response is appropriate other than the fact that it is untimely. On the other hand, the prejudice to Defendant would be substantial if the Court struck its response memorandum. Further, the delay in question was less than one month, a delay which has had little bearing on the progress of this case. Defendant argues that its failure to respond was in good faith, and the Court accepts that representation. Lastly, even without the benefit of Defendant's response, the Court would be obligated to interpret the insurance contract and apply the relevant law correctly. Plaintiff would not prevail merely because Defendant's response is stricken.

Because the Court prefers to rule on the merits whenever possible, the Court believes that striking Defendant's response memorandum under the facts of this case would be inequitable. Thus, the Court denies Plaintiff's motion to strike.

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

**Standard of Review**

The Court may grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477

U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

When cross motions for summary judgment are filed, if both parties "proceed on the same legal theory and rely on the same material facts," a court should enter summary judgment for one of the parties. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

**Discussion**

Because the Court is sitting in diversity, Florida substantive law applies. *See, e.g., Admiral Ins. Co. v. Feit Management Co.,* 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").

Under Florida law, a breach of contract action requires three elements: a valid contract, a material breach of that contract, and damages. *See, e.g., Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999); *Miller v. Nifakos*, 655 So. 2d 192, 193 (Fla. 4th Dist. Ct. App. 1995). It is not disputed that a valid insurance contract existed between Henderson and Defendant. The question for this case is whether Defendant breached that contract by not defending Henderson in the underlying state court action.

As the Florida Supreme Court has stated, "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Florida Insurance Guaranty Ass'n, Inc.*, 908 So. 2d 435, 442-

6

43 (Fla. 2005). The duty is determined from the facts alleged in the complaint, and the "insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Id.* at 443.

However, an insurance company has "no duty to defend a suit where the complaint upon its face alleges a state of facts which fails to bring the case within the coverage of the policy." *Capoferri v. Allstate Insurance Co.*, 322 So. 2d 625, 627 (Fla. Dist. Ct. App. 1975). The allegations in the complaint must be "fairly read." *Fun Spree Vacations, Inc. v. Orion Insurance Co.*, 659 So. 2d 419, 421 (Fla. Dist. Ct. App. 1995). A plaintiff cannot trigger an insurer's duty to defend through artful wording of the complaint alone. *State Farm Fire and Casualty Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. Dist. Ct. App. 2003); *see also Hatmaker v. Liberty Mutual Fire Insurance Co.*, 308 F. Supp. 2d 1308, 1316 (M.D. Fla. 2004) ("[W]here the alleged facts establish intentional conduct, but the claim alleges negligence, the negligence label should be disregarded. While a wolf in sheep's clothing presents a clever disguise it is still a wolf."). To trigger the insurer's duty to defend, the complaint must adequately state a cause of action, and that cause of action must seek recovery for the type of damages covered by the contract for insurance. *Tippett*, 864 So. 2d at 36.

The issue in these cross motions for summary judgment is simple – whether the complaint in the underlying state action adequately alleged a cause of action against Henderson for negligence that was covered by Henderson's homeowners' policy. If the complaint alleged conduct by Henderson covered by the policy, Defendant had a duty to defend Henderson and provide coverage in the underlying suit. Under that scenario, Defendant would be liable for breach of contract. If the complaint did not allege conduct covered by the policy, Defendant had

7

no duty to defend, and Defendant did not breach the policy. Thus, the Court must examine the allegations in the complaint in the underlying state action to determine whether Count III adequately stated a cause of action against Henderson for negligence that was covered by his homeowners' insurance policy.

In Florida, to assert a cause of action for negligence, a plaintiff must allege that "the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Florida Dept. of Corrections v. Abril*, 969 So. 2d 201, 204 (Fla. 2007). In the underlying state case, Plaintiff alleged that Henderson had a duty to "ensure the safety" of Plaintiff. (Pl. Ex. F ¶ 28.) Plaintiff then alleged that Henderson "breached his duty by consuming alcoholic beverages until his judgment and reason were impaired and he was incapable of comprehending his actions." (*Id.* at ¶ 30.)

Plaintiff asserted the following slew of allegations that Henderson committed as a result of his intoxication: allowing Plaintiff to stand on a high railing with a "steep and dangerous dropoff"; allow Plaintiff to participate in a "fantasy game" where Plaintiff was a model; photographing Plaintiff in a sexually suggestive manner; allowing Plaintiff to swim in a pool without supervision; allowing Plaintiff to play with a gun and a knife; photographing Plaintiff with the gun and the knife; allowing Plaintiff to consume beer; engaging in "physical 'horseplay'" with Plaintiff; and "negligently touching" Plaintiff on her genitals. (*Id*. at ¶¶ 31, 33.)

The Court fails to see how any of these allegations support a cause of action for negligence. The bulk of these allegations involve inappropriate physical contact or sexual acts with Plaintiff. These acts are not "negligent" – they are intentional, and as such, they cannot

8

support a cause of action for negligence. As the Florida Supreme Court has explained,

> [t]o state that a child molester intends anything but harm and long-term emotional anguish to the child defies logic. The petitioners argue that [the perpetrator's] diminished mental capacity prevented her from forming any specific intent to harm the children. Nonetheless, we believe that specific intent to commit harm is not required by the intentional acts exclusion. Rather, all intentional acts are properly excluded by the express language of the homeowners policy.

*Landis v. Allstate Insurance Co.*, 546 So. 2d 1051, 1053 (Fla. 1989). Thus, all allegations regarding Henderson's photography, having Plaintiff pose for photographs, and "negligent touching" are all intentional torts as explained in *Landis*. The fact that Henderson had been consuming alcohol is unavailing, because he need not have the specific intent to cause the harm to Plaintiff.[3] These allegations could not constitute a cause of action for negligence, nor could they trigger Defendant's duty to defend under the intentional acts exception.

Further, these alleged acts fall under the policy's criminal acts exception and the molestation exception. In Florida, the crime of "lewd or lascivious molestation" is defined as "a person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age." Fla. Stat. § 800.04(5). Likewise, a person is guilty of "lewd or lascivious conduct" when a person "intentionally touches" another person under 16 years of age in a lewd or lascivious manner or

---

[3]In a criminal case, voluntary intoxication is only a relevant defense if conviction requires demonstrating a specific intent to commit the crime. In general intent crimes, where "the voluntary doing of the wrongful act itself constitutes the crime," voluntary intoxication is not a defense. *Garner v. State*, 9 So. 835, 845 (Fla. 1891). One cannot voluntarily induce intoxication to "nerve himself up" to commit a crime. *Id.* The same logic applies in the case of intentional torts. Henderson's intentional acts do not suddenly become "negligent" merely because he has intentionally consumed copious amounts of alcohol and becomes intoxicated. In any case, *Landis* states that the perpetrator need not have a specific intent to molest to be considered an "intentional act," so all discussion of voluntary intoxication is unavailing for Plaintiff.

"solicits a person under 16" to commit a lewd or lascivious act. Fla. Stat. § 800.04(6). The statute does not define "lewd or lascivious," but Florida courts have defined the terms with descriptions like the following: "'Lewd,' 'lascivious,' and 'indecent' are synonyms and connote wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator." *Boles v. State*, 27 So. 2d 293, 294 (Fla. 1946). To qualify, the "act" need not be physical but may be a simple verbal statement. *Morris v. State*, 789 So. 2d 1032, 1033 (Fla. Dist. Ct. App. 2001). Likewise, molestation is defined as the "act of making unwanted and indecent advances to or on someone, especially for sexual gratification." Blacks Law Dictionary (8th ed. 2004); *see also* Fla. Stat. § 90.404(2)(b)(2) (defining "child molestation" as a violation of Fla. Stat. § 800.04 under Florida's evidence rules). Clearly, the allegations involving Henderson's posing, photographing, and touching Plaintiff fit the definition of lewd and lascivious conduct under Florida law and the definition of "molestation."

Arguably, Henderson's allowing Plaintiff to stand on a high railing and to swim unattended in a swimming pool do not constitute molestation or exploitation of a minor child. While Henderson may have breached is duty of care by allowing minor children to conduct themselves in this fashion, the underlying state court complaint does not adequately allege damages in a way that adequately stated a cause of action for negligence. Plaintiff failed to specify what injuries resulted from Plaintiff's standing on a high railing and swimming in the pool. Plaintiff only stated that "[a]s a direct and proximate result of the above-described negligence, Plaintiff, Jane Doe, suffered harm." (Pl. Ex. F ¶ 35.) This clause is not a statement of fact – it is a legal conclusion. Plaintiff did not assert facts to demonstrate that Plaintiff

suffered a *physical injury*[4] that was caused by these acts. If an injury is not causally tied to an act, then it cannot form the basis of a claim for negligence. As one Florida court held, "where negligence is the basis of an action, the complaint must contain not only allegations of the negligent acts or omissions complained of, but also *allegations of fact* showing that the injury, or death, was the proximate result of the negligence alleged." *Romans v. Warm Mineral Springs, Inc.*, 155 So. 2d 183, 184 (Fla. Dist. Ct. App. 1963); *see also Woodbury v. Tampa Waterworks Co.*, 49 So. 556, 559 (Fla. 1909) ("The allegation that the defendant's negligence was the proximate cause of the damage to the plaintiff is insufficient, when not sustained by the facts alleged."). Considering the allegations in complaint in the underlying state action, the Court finds that that complaint inadequately pled both causation and damages. Thus, Plaintiff failed to state a cause of action for negligence which would have triggered Defendant's duty to defend against Henderson's alleged "negligence" for allowing Plaintiff to stand on a railing and swim unattended.

Because Plaintiff failed to plead a cause of action for negligence against Henderson in the underlying state action, and because the allegations in that complaint against Henderson were for conduct not covered by the insurance policy, the Court holds that Defendant had no duty to defend Henderson. Since Defendant had no duty to defend, Defendant did not breach its contract with Henderson. Thus, Defendant is entitled to an entry of summary judgment on Count I for

---

[4]Long ago, the Florida Supreme Court stated, in an action where the only damages were mental suffering, that "the resultant injury is one that soars so exclusively within the realms of spirit land that it is beyond the reach of the courts to deal with, or to compensate by any of the known standards of value." *International Ocean Telegraph Co. v. Saunders*, 14 So. 148, 152 (Fla. 1893). Put simply, before a plaintiff can recover damages for emotional distress caused by negligent conduct, the emotional distress must flow from a *physical injury*. *R.J. v. Humana of Florida, Inc.*, 652 So. 2d 360, 362 (Fla. 1995).

breach of contract.

**Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Strike Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion for Default (DE 25) is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment (DE 19) is **DENIED**.

3. Defendant's Motion for Partial Summary Judgment (DE 35) is **GRANTED**.  As a matter of law, Defendant had no duty to defend Anthony Ray Henderson in the underlying state action.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of June, 2008.

Copies to:  
all counsel of record

KENNETH A. MARRA  
United States District Judge